**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| CANCER GENETICS, INC., : | |
| Plaintiff, : | |
| : | Civil Action No. 07-273 (JAG) |
| v. : | |
| : | **OPINION** |
| KREATECH BIOTECHNOLOGY, B.V., : | |
| Defendant. : | |

**GREENAWAY, JR., U.S.D.J.**

    This matter comes before this Court on the motion of Defendant Kreatech Biotechnology, B.V. ("Defendant" or "Kreatech"), to transfer venue to the Southern District of New York, pursuant to 28 U.S.C. § 1404(a). For the reasons set forth below, Defendant's motion is granted.

**BACKGROUND**

    Kreatech, based in Amsterdam, and Cancer Genetics, Inc. ("Plaintiff" or "CGI"), based in New Jersey, are biotechnology companies that develop genomic-based products to diagnose and monitor cancer. CGI produces probes, which are stretches of DNA, cloned from cells, later used to detect specific abnormalities. (First Am. Compl. ¶ 7.) Probes require labeling, or hybridization, (id. at ¶ 15), and Kreatech provided that service for CGI, (id. at ¶ 18). On December 17, 2001 CGI and Kreatech entered into a Market License and Supply Agreement ("License Agreement"), in which Kreatech agreed to label CGI's cancer probes, and grant CGI a

1

license to market the labeled probes.  (Id. at ¶ 19.)  After the License Agreement expired in 2004, CGI and Kreatech continued their business relationship, shipping the probes between Holland and New Jersey.  (Id. at ¶ 21.)  On June 27, 2006, CGI, Kreatech, and Master Diagnostica, a probe distributor, based in Spain, entered into a Letter of Understanding ("LU") and Material Transfer Agreement ("MTA").  (Id. at ¶ 32.)   The LU and MTA provided terms for Kreatech to label CGI probes, and for Master Diagnostica to distribute the labeled probes in European markets.  (Id.)   Additionally, the LU contained a permissive forum selection clause, which stated in relevant part:

> [T]he parties, pursuant to the Hague Convention, hereby submit to any federal court of competent jurisdiction in New York in order to enforce any and all rights or disputes arising out of, or under this Letter, including those concerning any breach or alleged breach of the MTA.

(Def.'s Br. in Supp. of Mot. to Transfer Ex. C at 4.)  The LU also included a mandatory choice of law provision providing that "[a]ny disputes hereunder shall be governed by the laws of New York."  (Id. at 5.)  The MTA similarly provided that "its terms and conditions, shall be governed by and construed according to the laws of the State of New York."  (Def.'s Br. in Supp. of Mot. to Transfer Ex. C, Addendum B at 2.)

Probe sales were less than anticipated, and at the time of the LU, CGI owed Kreatech approximately $300,000.  (Countercl. ¶¶ 14-16.)  In an email correspondence, CGI and Kreatech agreed to a payment schedule.  The terms of the payment schedule were that CGI would pay its overdue debt, plus interest, in "installment payments of $15,000 (June 15, 2006), $70,000 (October 15), $72,500 (January 15, 2007), $72,500 (April 15) and $74,981 (July 15, 2007)." (Countercl. ¶ 20.)  This payment schedule was printed, and signed by CGI President, Luis

Maione, on June 19, 2006.  (Countercl. ¶ 21.)

On October 15, 2006, CGI failed to make its second scheduled payment.  (Countercl. ¶ 23.)  After learning of CGI's default, Kreatech's counsel requested the funds in a letter dated November 28, 2006.  (Def.'s Br. in Supp. of Mot. to Transfer Ex. D).  CGI responded by sending a $4,000 payment as a display of its good faith, and a letter stating its intention to pay.  (Countercl. ¶ 25.)  However, CGI neglected to make its January payment.   (Countercl. ¶ 26.)  On January 19, 2007, CGI sent a letter to Kreatech, stating that a pending "bridge loan" would put CGI "in a position to pay Kreatech."  (Def.'s Br. in Supp. of Mot. to Transfer Ex. E.)  CGI did not pay Kreatech, but instead filed a Complaint with this Court on January 17, 2007.  (See generally, Compl.)  At the time of this motion, CGI remained overdue on multiple payments amounting to over $300,000.  (Countercl. ¶ 16.)  The failed payments form the basis of Kreatech's Counterclaim.

CGI, however, alleges that Kreatech retained CGI's products, and is using that technology to manufacture and market probes in competition with CGI, (First Am. Compl. ¶¶ 53-61), despite clauses in the LU and MTA requiring Kreatech to return all such products, (id. at ¶ 46).  CGI's action for breach of contract and fraud arise out of the LU and MTA.

## DISCUSSION

### I. Standard of Review

"For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  Venue transfer under § 1404(a) is entirely within the discretion of the courts and involves an individualized, fact intensive consideration of all the relevant factors.

Cadapult Graphic Sys. v. Tektronix, Inc., 98 F. Supp. 2d 560, 564 (D.N.J. 2000).  The movant bears the burden of proof that transfer is necessary.  Shutte v. Armco Steel Corp., 431 F.2d 22 (3d Cir. 1970), cert. denied, 401 U.S. 910 (1971).  However, the moving party is not required to show "truly compelling circumstances for . . . change . . . [of venue, but rather, that] all relevant things considered, the case would be better off transferred to another district." In re United States, 273 F.3d 380, 388 (3d Cir. 2001) (citing In re Balsimo, 68 F.3d 185, 186 (7th Cir. 1995)); see also  Hoffer v. InfoSpace.com, Inc., 102 F. Supp. 2d 556, 572 (D.N.J. 2000).

In exercising their discretion, courts applying federal law have not limited their consideration to the three enumerated factors in § 1404(a) - the convenience of the parties, the witnesses, and the interests of justice - but, have considered a range of relevant factors to determine whether if, on balance, the litigation would more conveniently proceed and the interests of justice would be better served by transfer to a different forum.  Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).

These factors include a series of public and private interests.  Id. at 880.  The private interests include: (1) the plaintiff's forum preference; (2) the defendant's preference; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the location of books and records.  The public interests include: (1) the enforceability of the judgment; (2) practical considerations in making the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.  Id. at 879.

"Within this framework, a forum selection clause is treated as a manifestation of the

4

parties' preferences as to a convenient forum." Jumara, 55 F.3d at 880.  Although a forum selection clause is not dispositive, it is entitled to substantial consideration.  See Cadapult, 98 F. Supp. 2d at 564 (citing Jumara, 55 F.3d at 880).  Forum selection clauses are prima facie valid, and should be respected unless the resisting party makes a "strong showing" that the clause is "unreasonable" under the circumstances.  Reynolds Publishers, Inc. v. Graphics Fin. Group, Ltd., 938 F. Supp. 256, 263 (D.N.J. 1996) (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972)).  Such a clause is "unreasonable" when the objecting party establishes "(1) that it is a result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would . . . result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable."  Cadapult, 98 F. Supp. 2d at 565 (citing Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 202 (3d Cir. 1983)).   Where the forum selection clause is valid, the plaintiffs bear the burden of demonstrating why they should not be bound by their contractual choice of forum.  Jumara, 55 F.3d at 880.

## II.  New York is a Venue Where the Action Could Have Been Brought

The threshold issue in a § 1404(a) motion is whether the proposed alternative forum is a venue where the action could have been brought.  28 U.S.C. § 1404(a).  In an action based solely on diversity jurisdiction, 28 U.S.C. § 1391(a) provides that venue is proper where the defendant resides, where a substantial part of the events that gave rise to the claim occurred, or where the defendant is subject to personal jurisdiction.

Though Kreatech is not a resident of New York and a substantial part of the events giving rise to the case sub judice occurred in Amsterdam, venue may be proper in the Southern District of New York, if Kreatech is subject to personal jurisdiction in New York.

To determine whether personal jurisdiction over a defendant in a diversity action is proper, this Court must conduct a two-step analysis. The Court must first look to the forum state's long-arm statute, and second, ascertain if the exercise of jurisdiction violates the Due Process Clause of the Fourteenth Amendment. See IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998); Vetrotex Certaineed Corp. v. Consol. Fiber Glass Prods. Co., 75 F.3d 147, 150 (3d Cir. 1996). As New Jersey's long arm statute permits the exercise of personal jurisdiction to the fullest limits of due process, as defined under the Constitution of the United States, the inquiry collapses into a single step. Federal law defines the parameters of this Court's in personam jurisdiction. See IMO Indus., Inc., 155 F.3d at 259. Personal jurisdiction, however, is a waivable right and parties can consent to the jurisdiction of any particular court. Nat'l Equip. Rental, Ltd. v. Szukhent, 375 U.S. 311, 315-16 (1994) (holding that "parties to a contract may agree in advance to submit to the jurisdiction of a given court").

Kreatech consented to personal jurisdiction in New York. (Def.'s Br. in Supp. of Mot. to Transfer Ex. C at 4) (stating that "the parties . . . submit to any federal court of competent jurisdiction in New York."). Under National Equipment Rental, Ltd., Kreatech is subject to personal jurisdiction in New York. Thus, the Southern District of New York is a venue in which the case could have been brought.

**III. Private and Public Factors Weigh in Favor of Transfer to the Southern District of New York**

The Southern District of New York is a proper venue in which the case could be brought. Now this Court must consider the relevant factors to determine whether, if on balance, the litigation would proceed more conveniently, and whether the interests of justice would be better

6

served, by transfer to a different forum. Jumara, 55 F.3d at 879.

### A. Private Factors

Private factors include the plaintiff's choice of forum, where the claim arose, convenience to the parties and access to records such that trial can be as easy, expeditious, and inexpensive as possible. Jumara 55 F.3d at 879. In this case, the private factors weigh in favor of transferring this action to the Southern District of New York.

#### 1. Plaintiff's Chosen Forum and the Existence of a Forum Selection Clause

The first private factor, the plaintiff's choice of forum, is entitled to great deference, especially when the plaintiff chooses his or her home forum. Tischio v. Bontex, Inc., 16 F. Supp. 2d 511, 521 (D.N.J. 1998). Although there is a strong presumption in favor of Plaintiff's choice, this presumption is not dispositive. Shutte, 431 F.2d at 25; Lawrence v. Xerox Corp., 56 F. Supp. 2d 442, 444 (D.N.J. 1999). A forum selection clause is also given "substantial consideration." Jumara, 55 F.3d at 880.

There are two types of forum selection clauses: permissive and mandatory. A permissive forum selection clause refers to consent to jurisdiction in a particular forum, but does not preclude litigation in other fora. Int'l Bus. Software Solutions, Inc. v. Sail Labs Tech., AG, 440 F. Supp. 2d 357, 363 (D.N.J. 2006). A mandatory forum selection clause, on the other hand, designates an exclusive forum to resolve disputes. Id. While courts distinguish permissive and mandatory forum selection clauses, they disagree over the relative weight to which permissive forum selection clauses are entitled, when considering motions to transfer under § 1404(a). Compare Haagen-Dazs Shoppe Co. v. Born, 897 F. Supp. 122, 125 (S.D.N.Y. 1995) (stating that the "permissive nature of the forum selection clause need not affect the weight it is given"), and

Stateline Power Corp. v. Kremer, 404 F. Supp. 2d 1373, 1380-1381 (S.D. Fla. 2005) (considering a permissive forum selection clause as having great weight in venue transfer analysis), with Ramada Worldwide, Inc. v. Bellmark Sarasota Airport, LLC, No. 05-2309, 2006 U.S. Dist. LEXIS 96543, at *6-8 (D.N.J. June 15, 2006) (holding that non-exclusive forum selection clauses have a less determinative effect than mandatory clauses), and Riviera Fin. v. Trucking Servs., 904 F. Supp. 837, 838 (N.D. Ill. 1995) (finding that non-exclusive forum selection clauses do not meet the same presumptive validity of mandatory forum selection clauses).

Notwithstanding the exact weight given, a permissive forum selection clause is a factor considered in § 1404(a) motions. See Travelodge Hotels, Inc. v. Mangat Houston Race Track, LLC, No. 06-3543, 2007 U.S. Dist. LEXIS 53655, at *20 (D.N.J. July 24, 2007) (holding that permissive forum selection clauses are manifestations of the parties' intent to litigate in a chosen forum and must be considered in conjunction with other § 1404(a) factors); UFH Endowment, Ltd. v. Nev. Manhattan Mining, Inc., No. 98-5032, 2000 U.S. Dist. LEXIS 14178, at *12-14 (S.D.N.Y. Sept. 27, 2000); Ramada Franchise Sys. v. Cusack Dev., No. 96-8085, 1997 U.S. Dist. LEXIS 7888, at *8 (S.D.N.Y. June 5, 1997) (citing JSP Int'l v. Tri-Tech Group, Inc., No. 94-2422, 1995 U.S. Dist. LEXIS 9684 at *15 (S.D.N.Y. July 11, 1995) (existence of a forum selection clause, even if permissive, "is a significant factor that must be weighed in considering the issue of the interests of justice")).

Here, the parties agree that the forum selection clause is permissive, but disagree about the amount of weight the clause should be given. Although permissive, Kreatech argues that great weight should be afforded to the forum selection clause because it evidences the parties' intent to litigate disputes in New York. (Def.'s Br. in Supp. of Mot. to Transfer 6.) Kreatech

8

also argues that when coupled with the choice of law provision, which mandates the application of New York law, the forum selection clause "provides the impetus for a transfer under Section 1404(a)." (Id. at 8.)  In response, CGI argues that the higher standard of scrutiny, which shifts the burden of persuasion to the party opposing the motion, is reserved for mandatory, rather than permissive, forum selection clauses.  (Pl.'s Br. in Opp'n of Mot. to Transfer 3.)

While CGI is correct in its assertion, and a mandatory choice of law clause does not change the permissive nature of this forum selection clause, see Zokaites v. Land-Cellular Corp., 424 F. Supp. 2d 824, 835 (W.D. Pa. 2006), the parties' forum selection clause is nevertheless entitled to consideration, Travelodge Hotels, Inc., 2007 U.S. Dist. LEXIS at *20; UFH Endowment, Ltd., 2000 U.S. Dist. LEXIS at *12-14; Ramada Franchise Sys., 1997 U.S. Dist. LEXIS at *8; JSP Int'l, 1995 U.S. Dist. LEXIS at *15.  Therefore, when viewed with the other factors, discussed below, the existence of a forum selection clause, whether permissive or mandatory, weighs in favor of transfer.

### 2. Where the Claim Arose

The second private factor courts consider is where the claim arose.  When the chosen forum has little connection with the operative facts of the lawsuit, such that retaining the action conflicts with the interests in efficiency and convenience, other private interests are afforded less weight. Zokaites, 42 F. Supp. 2d at 840;  see also IBM Credit Corp. v. Definitive Computer Servs., Inc., No. 95-3927, 1996 U.S. Dist. LEXIS 2385, at * 6 (N.D. Cal. Feb. 27, 1996) ("ordinarily, where the forum lacks any significant contact with the activities alleged in the complaint, plaintiff's choice of forum is given considerably less weight, even if the plaintiff is a resident of the forum").

CGI has not identified any alleged misconduct, or other related facts, occurring in this district. Specifically, Kreatech and CGI held business meetings in New York, and all labeling and handling of the probes occurred in Amsterdam. (Def.'s Br. in Supp. of Mot. to Transfer 8.) CGI even agrees that its claims of misappropriation occurred in Amsterdam. (First Am. Compl. ¶¶ 46-61.) Although, CGI is a resident of New Jersey, this appears to be the only connection to New Jersey. As such, this Court affords little weight to Plaintiff's choice of forum in the District of New Jersey.

### 3. Convenience of Parties and Witnesses, and Location of Books and Records

Courts must also consider whether convenience of the parties and witnesses, and access to proof would be better served by a transfer, such that a trial in the alternative forum would be easy, expeditious, and inexpensive. "If the action was transferred to the Southern District of New York, it would be placed in either Manhattan or White Plains. As the parties point out in their briefs, the distance between Newark and White Plains and Manhattan is forty-two and ten miles, respectively. [(See Pl.'s Br. in Opp'n. of Mot. to Transfer 9; see also Def.'s Br. in Supp. of Mot. to Transfer 9.)] The convenience of the parties and witnesses and the access to proof will not be significantly impacted regardless of whether this matter is litigated in Newark, White Plains or Manhattan." Johnson v. Nextel Commc'ns, Inc., No. 06-5547, 2007 U.S. Dist. LEXIS 70926, *13 (D.N.J Sept. 21, 2007). Also, counsel for CGI is predominantly located in New York. (Def.'s Br. in Supp. of Mot. to Transfer 9.)

Finally, this action has been before this Court for a relatively short period of time and, "a transfer will not significantly disrupt the litigation or result in a waste of judicial resources." Zokaites, 424 F. Supp. 2d at 840. After reviewing the private interest factors, the Southern

District of New York is convenient for the parties, and Plaintiff would suffer no undue prejudice if the litigation was transferred to New York.

### B. Public Factors

The relevant public factors include: the trial judge's familiarity with the applicable law, the local interest in having a matter adjudicated at home, the burdens imposed upon a jury, and the interest of justice. Jumara, 55 F.3d at 880. After analyzing these public factors, this Court finds that transfer to the Southern District of New York is appropriate.

#### 1. Familiarity with Applicable Law

The first public factor considered is the forum court's familiarity with the applicable law. Courts recognize "the desire to have [a] case tried before judges familiar with the applicable law." Tischio, 16 F. Supp. 2d at 526. In the present case, the parties agreed to a mandatory choice of law provision. It provides that New York law will govern any issue raised concerning the LU and MTA. (Def.'s Br. in Supp. of Mot. to Transfer Ex. C at 4.) A court in the Southern District of New York is better positioned, and more familiar with New York law. Hoffer, 102 F. Supp. 2d at 576.

#### 2. Local Interest

The second public factor considered is whether the controversy concerns a matter of local interest. Typically, when a substantial amount of the alleged culpable conduct occurred in the chosen forum, that court favors retaining jurisdiction as a matter of local interest. Hoffer, 102 F. Supp. 2d at 576.

As discussed supra Section III.A.2, the alleged culpable conduct in this case occurred in Amsterdam. Additionally, the relief sought by CGI would limit Kreatech's actions in

11

Amsterdam. Therefore, there is no inherent local interest warranting this Court to retain jurisdiction over this matter.

New York, on the other hand, has a strong local interest in this case. The parties conducted meetings in New York, agreed to bring suit in a New York court, and consented to be governed by New York law. New York has an interest in governing the business dealings of parties within the state and determining which parties invoke New York law. As such, this factor weighs in favor of transferring venue to the Southern District of New York.

### 3. Burden of Jury

The third public factor considered is the burden imposed on the community by litigation in the forum. Courts have held that the burden of jury duty "ought not to be imposed upon the people of a community which have no relation to the litigation." Hoffer, 102 F. Supp. 2d at 576 (citing Tischio, 16 F. Supp. 2d at 526). Though a resident of New Jersey, CGI is a Delaware corporation. The transactions and activities giving rise to this litigation occurred outside of New Jersey. There is little connection to this forum. New Jersey jurors should not be burdened with adjudicating a matter that has relatively little connection with New Jersey. See Lucent Techs. v. DiCon Fiberoptics, Inc., No. 05-2534, 2006 U.S. Dist. LEXIS 58283, at *14-15 (D.N.J. Aug. 8, 2006) (favoring a transfer of venue where the relevant transactions giving rise to the claim occurred outside the forum, despite Plaintiff's choice of home forum). This factor weighs in favor of transfer.

### 4. Public Policies of the Fora

Fourth, courts must determine if transferring the case promotes the public policy of the forum. Jumara, 55 F.3d at 878-880; Tischio, 16 F. Supp. 2d at 526. As a matter of public policy,

this Court refrains from interfering with reasonable business agreements.  See Salovaara v. Jackson Nat'l Life Ins. Co., 246 F.3d 289, 298 (3d Cir. 2001) (stating "[a]s a general matter, it makes better sense, when venue is proper but the parties have agreed upon a not unreasonable forum selection clause that points to another federal venue, to transfer"); see also  Cadapult, 98 F. Supp. 2d at 565.  Forum selection clauses are "bargained for by the parties[, and enforcement] protects their legitimate expectations and furthers vital interests of the justice system." Stewart, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring).

   CGI and Kreatech contemplated, and negotiated for, New York to be the jurisdiction for raising suits, as well as one common meeting location.  (See Def.'s Br. in Supp. of Mot. to Transfer Ex. C at 4) (stating that "the parties . . . hereby submit to any federal court of competent jurisdiction in New York in order to enforce any and all rights or disputes arising out of, or under this letter, including those concerning any breach or alleged breach of the MTA); (see also Def.'s Br. in Supp. of Mot. to Transfer Ex. C at 2) (explaining that the parties agree to meet, "three times annually, either in Amsterdam, *New York* or Madrid on a rotating basis . . . to discuss and plan marketing strategy") (emphasis added).  In addition, the parties agreed to "be governed by the laws of New York."  (Def.'s Br. in Supp. of Mot. to Transfer Ex. C at 5.)

   These facts, especially when considered together, evidence the parties' intent to make New York the nucleus of business dealings between the diverse entities.  These contractual agreements were bargained for between two competent business entities, and neither party makes the argument that the contracts are invalid.  The public policies of New Jersey weigh in favor of transferring venue to the negotiated jurisdiction.

**IV. Additional Considerations**

Finally, in addition to the factors noted above, courts have general discretion, and can consider other factors to determine if a transfer is in the interests of justice. Johnson, 2007 U.S. Dist. LEXIS at *13.

This action marks the end of a near five year business relationship. (First Am. Compl. ¶¶ 19-61.) During the five years, CGI accumulated approximately $300,000 of debt owed to Kreatech. (Answer to Am. Compl. ¶ 35.) Rather than paying down its debt, as promised on numerous occasions, (Countercl. ¶¶ 24-26), CGI initiated this litigation, (id. at ¶¶ 26-27). While this Court abstains from evaluating the merits of the claim, the timing of this action seems to suggest a certain degree of anticipatory filing. Equal Employment Opportunity Comm'n v. Univ. of Pa., 850 F.2d 969, 976 (3d Cir. 1988) ("[C]ourts have rejected the [first-filed] rule . . . when the first-filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable, forum."). This fact, when combined with the above private and public interests, tips the scale in favor of transferring this action to the Southern District of New York.

## CONCLUSION

For the reasons stated above, this Court grants Defendant Kreatech Biotechnology, B.V.'s motion to transfer venue to the Southern District of New York, pursuant to 28 U.S.C. § 1404.

Date: December 11, 2007

                                       S/Joseph A. Greenaway, Jr.
                                       JOSEPH A. GREENAWAY, JR., U.S.D.J.